Leone Nayavu VARO; et al., Petitioners,

v.

John ASHCROFT, Attorney General, Respondent.

No. 03–73236.

Agency Nos. A79–257–664, A79–257–665.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 12, 2004.*

Decided Aug. 16, 2004.

Ashwani K. Bhakhri, Esq., Burlingame, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Marion E. Guyton, Attorney, U.S. Department of Justice, Washington, DC, for Respondent.

Before HAWKINS, THOMAS, and BEA, Circuit Judges.

## MEMORANDUM **

Leone Varo,[1] a native of Fiji, petitions for review of the Board of Immigration Appeals' ("BIA") decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture. We grant the petition for review. Because the parties are familiar with the factual and procedural history of this case, we will not recount it here.

Varo, an ethnic Fijian, claims that he was persecuted in the past and faces future persecution on account of his political opinion, namely his support of the Labor

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The asylum claim of Varo's wife is derivative.

Party and his support of land rights for members of the Indo–Fijian minority.

▇ Both the BIA and the immigration judge ("IJ") found Varo to be credible. His testimony—including the politically-motivated beating of the respondent in 1987, threats against the respondent in 1999, and the beating of his brother and rape of his sister in 1999—established that he was persecuted in the past on account of his political opinion." *See Chand v. INS,* 222 F.3d 1066 (9th Cir.2000).

▇ Because Varo established that he suffered past persecution, he is entitled to the legal presumption that he has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Prasad v. INS,* 101 F.3d 614, 617 (9th Cir.1996). In order to rebut this presumption the Department of Homeland Security ("DHS") must show by a preponderance of the evidence that conditions in Fiji have changed to such an extent that Mr. Varo no longer has a well-founded fear that he would be persecuted, should he return there. *See Borja v. INS,* 175 F.3d 732, 738 (9th Cir.1999) (en banc). To rebut this presumption the DHS invokes the State Department's 2001 Country Report on Human Rights Practices ("2001 Report").

The 2001 Report indicates that the current government in Fiji is dominated by ethnic Fijians; that the government was formed after a May 2000 coup, in which the Prime Minister, who was an ethnic Indian and a leader of the Labor Party, was deposed; that since that time the Labor Party has been excluded from participation in the cabinet of the ethnic Fijian-dominated government; that there has been continued discrimination and violence against Indo–Fijians; that the persons responsible for the coup were subject to prosecution; and that the Labor Party won over 10% of the parliamentary seats in the 2001 elections. Most importantly,

the BIA's decision emphasizes that "there is no indication that ethnic Fijians who support the Labor Party or who support Indo–Fijian rights have been targeted or harmed in any way" and that "[t]hus, the preponderance of the evidence of record *shows* that persons active in the Labor Party do not *generally* face harm in Fiji, and that, while Indo–Fijians may face some harm, their supporters who are ethnic Fijians *do not.*" (emphasis added).

However, "[o]ur cases hold that individualized analysis of how changed conditions will affect a specific petitioner's situation is required. Information about general changes in the country is not sufficient." *Garrovillas v. INS,* 156 F.3d 1010, 1017 (9th Cir.1998).

Here, as the BIA's decision itself acknowledges, there is nothing in the 2001 Report whatsoever specifically addressing the treatment of ethnic Fijians, like Varo, who support the Indo–Fijians, at whom "some violence [is] aimed," nor is there anything addressing the treatment of ethnic Fijians, who like Varo, support the Labor Party. At most, the 2001 Report on which the BIA relies, is ambiguous and inconclusive with respect to this most critical issue. Indeed, not only is there nowhere near a preponderance of evidence in the record favoring the BIA's conclusion, but rather, reasonable inferences from the record's scant treatment of Varo's specific circumstance likely militate in favor of a well-founded fear. For example, the record indicates that "[e]thnically based discrimination remains a serious problem;" that the nation is still affected by "racial discrimination and violence;" and that "[e]thnicity remains a dominant factor in the country." Varo, although a member of the ethnic majority, is a well-known figure in the small country of Fiji for his support of the Labor Party and Indo–Fijian land rights. Substantial harm was visited on

Varo for these very reasons in the past and the record offers little if any indication that the relevant circumstances have changed sufficiently to render Varo's fear of similar persecution less than well-founded. In any event, we need only determine that the record does not support the BIA's determination that a preponderance of the evidence favors finding that there has been a "fundamental change in circumstances" such that Varo no longer has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(i)(A). In light of the presumption of a well-founded fear and the BIA's reliance on an inconclusive and generalized country report to rebut that presumption, we grant the petition and remand to the BIA for further proceedings.

PETITION GRANTED.